IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| NATIVE ECOSYSTEMS COUNCIL, and ALLIANCE FOR THE WILD ROCKIES, | CV 17–47–M–DLC–JCL |
| Plaintiffs, | ORDER |
| vs. | |
| LEANNE MARTEN, U.S. Forest Service Region One Forester, UNITED STATES FOREST SERVICE, and UNITED STATES FISH & WILDLIFE SERVICE, | |
| Defendants. | |

Plaintiffs, Native Ecosystems Council and Alliance for the Wild Rockies ("Council"), challenge the United States Forest Service's ("Forest Service") decision to approve the Telegraph Vegetation Project ("Telegraph Project") on the Helena Lewis and Clark National Forest.   On March 20, 2018 Magistrate Judge Jeremiah C. Lynch entered his Findings and Recommendation (Doc. 38), recommending that the Forest Service's Motion for Summary Judgment (Doc. 18) be granted, and Council's Motion for Summary Judgment (Doc. 10) be denied. Council timely objects (Doc. 39) and therefore is entitled to de novo review of

those findings to which it specifically objects. 28 U.S.C. § 636(b)(1)(C). The

Court reviews for clear error those findings and recommendations to which no

party objects. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003);

*Thomas v. Arn*, 474 U.S. 140, 150 (1985). Clear error exists if the Court is left

with a "definite and firm conviction that a mistake has been committed." *United*

*States v. Syrax*, 235 F.3d 422, 427 (9th Cir. 2000) (citations omitted).

## INTRODUCTION

Council has raised the following claims: (1) the Forest Service violated

NEPA by failing to address the Telegraph and Tenmile Projects in a single

Environmental Impact Statement ("EIS"); (2) the Forest Service violated NEPA by

failing to adequately discuss the cumulative impacts of the Telegraph and Tenmile

Projects within the Telegraph EIS; (3) the Biological Opinion does not comply

with the Endangered Species Act ("ESA") because it does not contain a "detailed

discussion" of the effects of the Telegraph Project on grizzly bears; and (4) the

Forest Service violated NFMA because it improperly designated wildland urban

interface in violation of the Lynx Amendment to the Forest Plan. After reviewing

both parties motions for summary judgment, Judge Lynch recommended that the

Court dismiss all of Council's claims upon finding that: (1) the Court lacked

jurisdiction over certain claims because Council did not adequately raise these

claims during the administrative process; (2) Council waived certain claims by

failing to address these claims in its opening brief; and (3) the remaining claims lacked merit. The Court agrees with one exception. Because the Court concludes that Council properly raised its wildland urban interface claim during the administrative process, the Court will address the merits of this claim. Nevertheless, for the reasons explained below, the Court adopts Judge Lynch's recommendation to grant the Forest Service's Motion for Summary Judgment.

Because the parties are familiar with the factual and procedural background detailed in Judge Lynch's Findings and Recommendation it will only be restated here as necessary to understand the Court's order.

**LEGAL STANDARD**

## I.    National Environmental Policy Act

NEPA "has twin aims. First, it places upon [a federal] agency the obligation to consider every significant aspect of the environmental impact of a proposed action. Second, it ensures that the agency will inform the public that it has indeed considered environmental concerns in its decisionmaking process." *Kern v. U.S. Bureau of Land Mgmt.*, 284 F.3d 1062, 1066 (9th Cir. 2002) (quoting *Baltimore Gas & Elec. Co. v. Natural Res. Def. Council, Inc*., 462 U.S. 87, 97 (1983) (internal quotations and citations omitted). "NEPA is a procedural statute that does not mandate particular results but simply provides the necessary process to ensure that federal agencies take a hard look at the environmental consequences of

their actions." *High Sierra Hikers Ass'n v. Blackwell*, 390 F.3d 630, 639–40 (9th Cir. 2004) (internal citations and quotation marks omitted); *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 351 (1989) (stating that NEPA "prohibits uninformed–rather than unwise–agency action").

Before undertaking any "major Federal action significantly affecting the quality of the human environment," an agency must prepare a detailed EIS. 42 U.S.C. § 4332(2)(C); 40 C.F.R. § 1508.11. In order to decide whether an EIS is necessary, an agency may prepare an EA. 40 C.F.R. § 1508.9. An EA is a "concise public document" that must "briefly provide sufficient evidence and analysis for determining whether to prepare an environmental impact statement." Id. "NEPA documents must concentrate on the issues that are truly significant to the action in question, rather than amassing needless detail." 40 C.F.R. § 1500.1(b). If the EA concludes that the proposed action will not have a significant effect on the environment, the agency may issue a Finding of No Significant Impact and may then proceed with the action. 40 C.F.R. § 1508.13.

## II.    National Forest Management Act

NFMA requires forest planning of National Forests at two levels: the forest level and the individual project level. 16 U.S.C. §§ 1600–1687. At the Forest level, NFMA directs the Department of Agriculture to "develop, maintain, and, as appropriate, revise [forest plans] for units of the National Forest System." 16

U.S.C. § 1604(a).    A Forest Plan sets broad guidelines for forest management and

serves as a programmatic statement of intent to guide future site-specific decisions

within a forest unit.    *Citizens for Better Forestry v. U.S. Dep't of Agriculture*, 341

F.3d 961, 966 (9th Cir. 2003); *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S.

726, 729 (1998).    Forest Plans must "provide for multiple use and sustained yield

of the products and services" derived from the National Forests, including

"outdoor recreation, range, timber, watershed, wildlife and fish, and wilderness."

16 U.S.C. § 1604(e)(1).    At the individual project level, NFMA requires that each

individual project be consistent with the governing Forest Plan.    *Great Old*

*Broads for Wilderness v. Kimbrell*, 709 F.3d 836, 851 (9th Cir. 2013).

The Forest Service's interpretation and implementation of its own Forest

Plan is entitled to substantial deference.    *Forest Guardians v. U.S. Forest Serv.*,

329 F.3d 1089, 1099 (9th Cir. 2003).    This deference may be set aside only where

an agency takes a position that is "contrary to the clear language" of the Forest

Plan.    *Native Ecosystems Council v. U.S. Forest Serv.*, 418 F.3d 953, 962 (9th Cir.

2005).

## III.    The Administrative Procedure Act

Under the APA, a federal court "shall . . . hold unlawful and set aside agency

action, findings, and conclusions found to be arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with law; [or] without observance of

procedures required by law." 5 U.S.C. § 706(2). As recently articulated by the Ninth Circuit:

> Under this standard of review, an agency must examine the relevant data and articulate a satisfactory explanation for its action. An agency's action is arbitrary and capricious if the agency fails to consider an important aspect of a problem, if the agency offers an explanation for the decision that is contrary to the evidence, if the agency's decision is so implausible that it could not be ascribed to a difference in view or be the product of agency expertise, or if the agency's decision is contrary to the governing law.

*Organized Village of Kake v. U.S. Dep't of Agriculture*, 746 F.3d 970, 974 (9th Cir. 2014) (internal citation and quotation marks omitted).

Though a review of agency action under APA must be "thorough, probing, [and] in-depth," *Citizens to Preserve Overton Park, Inc*., 401 U.S. at 415, the standard of review is "highly deferential," *Northwest Ecosystem Alliance v. U.S. Fish and Wildlife Serv.,* 475 F.3d 1136, 1140 (9th Cir. 2007). The court must presume the agency action is valid and affirm it if a reasonable basis exists for the decision. *Id.*

## IV.    Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, a party is entitled to summary judgment if it "can show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Generally, cases involving review of final agency action under the APA do not

involve fact finding but only a review of the administrative record. *Northwest Motorcycles Ass'n v. U.S. Dep't of Agriculture*, 18 F.3d 1468, 1472 (9th Cir. 1994). Accordingly, summary judgment is the appropriate process to resolve this case.

## DISCUSSION

### I. Administrative Exhaustion

Judge Lynch found that the Court lacked jurisdiction over Council's NEPA and NFMA claims for failing to exhaust these claims during the administrative process. Council claims that the Forest Service violated NEPA because it failed to analyze the Telegraph and Tenmile Project in a single EIS. Council also claims that the Forest Service violated NFMA because it approved of fuels reduction treatments in the area designated as wildland urban interface in violation of the Lynx Amendment to the Forest Plan.

Before bringing a claim in federal court, a plaintiff must first exhaust its available administrative remedies. *Great Old Broads*, 709 F.3d at 846 (citing to 5 U.S.C. § 704). It is "inappropriate" for a federal court to review a claim that was not first presented in the administrative process. 36 C.F.C. § 218.14(b); *see also* 7 U.S.C. § 69129(e) and 16 U.S.C. § 6515(c). The purpose of this requirement is to allow the "agencies to utilize their expertise, correct any mistakes, and avoid unnecessary judicial intervention[.]" *Great Old Broads*, 709 F.3d at 846. A

plaintiff's failure to exhaust remedies as to a specific claim subjects the claim to dismissal. *Oregon Natural Desert Association v. Jewell*, 840 F.3d 562, 571–74 (9th Cir. 2016).

In the context of national forest timber sale litigation, members of the public may "alert[] the decision maker to the problem in general terms, rather than using precise legal formulations." *Idaho Sporting Congress v. Rittenhouse*, 305 F.3d 957, 965 (9th Cir. 2002). However, the claims raised during the administrative process must be "so similar to the claims that the district court can ascertain that the agency was on notice of, and had the opportunity to consider and decide, the same claims now raised in federal court." *Great Old Broads*, 709 F.3d at 846–47.

## A. Single EIS

Judge Lynch found that Council's general objections regarding the Telegraph Project's cumulative impacts analysis did not raise the specific claim that the Telegraph and Tenmile Projects are "cumulative actions" that required analysis in a single NEPA document. Council objects, arguing that it adequately raised its claim in "general terms" as permitted under *Rittenhouse*. *See Rittenhouse*, 305 F.3d at 965. Council further argues that it was not required to cite to a specific code provision or "incant the magic words" "cumulative actions" in order to preserve its claim for judicial review. (Doc. 39 at 6–12.)

As noted by Judge Lynch, Council is correct that it did not need to

specifically mention 40 C.F.R. § 1502.4(a) or § 1508.25(a)(2), nor was it required to use the phrase "cumulative actions" in order to preserve its claim in federal court. (Doc. 38 at 12.) *Rittenhouse* clearly allows for objections raised in *general terms* when the objection provides the agency with notice as to the *specific claim* raised. *Id.* (stating "claimants who bring administrative appeals may try to resolve their difficulties by alerting the decision maker to the problem in general terms. . . .[but] [c]laims must be raised with sufficient clarity to allow the decision maker to understand and rule on the issue raised") (internal citations omitted).

As Judge Lynch explained, the record clearly demonstrates that Council objected to the quality of the cumulative impacts analysis within the Telegraph EIS, which is "wholly separate" from the claim that both projects required analysis within a single NEPA document. (*See* Doc. 38 at 10; *see also Blue Mountains Biodiversity Project v. Blackwood*, 161 F.3d 1208 (9th Cir. 1998).) While the remedy for the former requires revision to various portions of an EIS, the remedy under the latter requires the Forest Service to begin anew with a single EIS containing a complete analysis of both projects. As more fully explained by Judge Lynch, there is no clear statement within Council's objections that would have put the forest service on notice that Council was objecting to the form of NEPA treatment (a single EIS) rather than its substance (the quality of its analysis). Having reviewed this claim de novo, the Court adopts the

recommendation to dismiss the claim for lack of jurisdiction.

**B. Wildland Urban Interface**

Judge Lynch found that Council failed to exhaust its claim that the Telegraph Project violated NFMA because it improperly designated the Project's wildlife urban interface and therefore approved of treatments that are inconsistent with the Lynx Amendment. Specifically, Council argues that the Forest Service erred in adopting the wildland urban interface as provided in two community wildfire protection plans. Because certain standards prescribed in the Lynx Amendment—specifically VEG S5 and S6—are exempted to a certain extent in wildland urban interface, Council argues that the Telegraph Project proposed more extensive vegetation management treatments than it should have.

For the reasons explained below, the Court finds that Council adequately raised this claim during the comment period and therefore properly exhausted it.

Council raised a number of objections during the comment period. Objection 28 alerted the Forest Service to Council's belief that the Telegraph Project violated the Lynx Amendment by designating excess wildland urban interface. AR 88411. The explanatory paragraph that follows this objection raises two concerns.[1] Its first sentence references back to objection 27 which

_____

[1] In full, the objection states:

argues that the Project is not in compliance with the 6% exemption, which is a separate, albeit closely related, issue.[2]   *See* AR 88410.   The next sentence states that "[t]he Lynx Amendment identifies the WUIs as areas within one mile of a community, or at least 28 residents per square mile.   The WUI for the Telegraph project clearly exceeds this standard."   AR 88411.

This is an adequate statement alerting the agency to the nexus of the issue in "general terms."   In the same way that Council was not required to name the

---

**28. The agency is violating the Lynx Amendment by creating WUI that exceed (sic) those identified in the Amendment, which means exemptions based on the Lynx Amendment are being exceeded.**

As we noted previously [in objection 27,] the acreage of exemptions for the Telegraph project include 11% of the project area, or exceeds those projected in the Lynx Amendment by almost double. The Lynx Amendment identifies the WUI as areas within one mile of a community, or at least 28 residents per square mile. The WUI for the Telegraph project clearly exceeds this standard as per the map provided in the FEIS. There are not actual boundaries identified for a mile radius around communities.   AR 8411.

[2]  The Lynx Amendment sets management direction and standards for certain activities that occur within "lynx habitat" on designated National Forests.   AR 62923.   The Lynx Amendment Standard VEG S5 "applies to all precommercial thinning projects, except fuel treatment projects that use precommercial thinning as a tool within the wildland urban interface (WUI) as defined by HFRA."   AR 62971 (internal citations omitted).   Similarly, the Lynx Amendment Standard VEG S6 "applies to all vegetation management projects except for fuel treatment projects within the wildland urban interface (WUI) as defined by HFRA."   AR 62972 (internal citations omitted).   Additionally, the Lynx Amendment provides three "reasonable and prudent measures."   Reasonable and prudent measure 1 minimizes harm to concentrated geographic areas or adjacent Lynx Analysis Units through a series of associated "terms and conditions" ("TC").   TC 1 ensures that the exceptions from Standards VEG S5 and S6 "do not occur in greater than 6 percent of lynx habitat on any forest."   AR 62946.   Therefore, TC 1 is only applicable if an area within a project is exempted from VEG S5 or VEG S6 as wildland urban interface.   However, it is a separate condition: a project may violate the Lynx Amendment by failing to comply with TC 1, the 6% exemption.   Alternatively, a project may violate the Lynx Amendment by improperly designating wildlife urban interface, even if it otherwise complies with TC 1.   Further still, a project may violate both provisions.   While Council raised both of these objections within the comment period, only the latter claim is before the Court.

specific code section in its NEPA claim, Council is not required to attribute to any specific factor the source of the perceived error. To the extent that Judge Lynch required Council to specifically mention either of the two community wildfire protection plans, the Court does not believe this level of detail is required. *See Rittenhouse*, 305 F.3d at 965–66 (finding that the plaintiffs had exhausted the claim that the forest service failed to conduct population monitoring of indicator species when the objection only raised concerns about how the timber sale would harm indicator species). Because Council claims that the Project violates NFMA because it improperly designates wildland urban interface, objection 28 suffices.

Further, the agency was adequately put on notice of this claim. In its response to the objections, the Forest Service explains that the wildland urban interface complies with the definition found in the Healthy Forests Restoration Act ("HFRA") because it relies upon the areas designated in the community wildfire protection plans. AR 88430. It goes on to explain that:

> [a]lthough the FEIS does not specifically address the composition of each WUI zone, the community wildfire protection plan does describe four zones each corresponding to one mile increments. As described in the Powell County [community wildfire protection plan], the 1.5-mile HFRA WUI area is not an adequate buffer in their situation. Therefore an expanded WUI protection area extending 4 miles outside the HFRA-defined 1.5 mile WUI will allow for better protection of values at risk.

AR 88430–31. Because the issue Council intended to raise pertains to the Forest Service's designation of wildland urban interface, and because the agency's

response addressed this objection by explaining how it designated wildland urban interface—by looking to the designations contained within the two community wildfire protection plans—this claim is adequately exhausted and the Court will address its merits.

Council raises two objections to the Project's designation of wildland urban interface. First, Council argues that the wildland urban interface provided in the Powell County and the Tri-County Plans is improper because the Plans designate larger acreage than is permitted under HFRA. Next, Council argues that even if the wildland urban interface is correctly designated within the County Plans, the Project itself proposes a wildland urban interface which exceeds that which is described. In both scenarios, Council argues that the result is the same: the Project exempts greater acreage under VEG S5 and S6 than is permitted by the Lynx Amendment.

Neither argument holds water. As already observed, Lynx Amendment Standards VEG S5 and S6 look to HFRA to define wildland urban interface. Under HFRA, wildland urban interface is "an area within or adjacent to an at-risk community that is identified in recommendations to the Secretary in a community wildfire protection plan." 16 U.S.C.A. § 6511(16). Alternatively, where there is no community wildfire protection plan in effect, HFRA provides more detailed instruction regarding how much land may be designated as it pertains to certain

geographic features. *See* 16 U.S.C.A. § 6511(16)(B). Because there are two community wildfire protection plans in place for the Telegraph Project area—the Powell County and Tri-County Plans—the Forest Service's use of these Plans to designate wildland urban interface expressly complies with HFRA.

Council specifically takes issue with the propriety of the Powell County Plan's designation. It argues first that the Powell County Plan begins with the HFRA designation and "then add[s] an additional four mile radius to that area." (Doc. 12 at 31.) The record contains no such indication.

The Powell County Plan does not begin with the HFRA definition; it creates its own. The Plan begins by stating that HFRA "offers a definition of Wildland-Urban Interface (WUI) but communities are also encouraged to use the CWPP process to derive their own definition of WUI within their county" which is what was done in this case. AR 6993. The Powell County Plan tailored its designation by delineating four concentric zones, each of 1-miles radius around Elliston, Montana, an "at-risk community." *Id.* The Plan distinguishes each of these four zones as either "low risk," "moderate risk," "high risk," or "very high risk." *Id.* "Each protection zone is incrementally ranked with reduced protection priority as distance from the center of the WUI increases." *Id.* Additionally, the Plan provides protection for "an area extending one mile on each side of a primary egress/ingress route," as well as "an area extending one mile on

each side of a major powerline." *Id.* The Tri-County Plan is structured in the same way. AR 92479. In the Project area, this results in wildland urban interface which is designated in circular zones around the two at-risk communities, Elliston and Rimini. Additionally, it contains wildland urban interface which is not circular, but rather runs parallel to an egress/ingress route and major powerlines in the area, extending one mile on either side.

Council argues next that the Powell and Tri-County Plans violated HFRA because designating the three and four mile zones around Elliston and Rimini designates area which is not "within or adjacent" to an "at-risk community." Council cites Black's Law Dictionary which defines adjacent as "lying near or close to, but not necessarily touching." (Doc. 12 at 33.)

Black's Law Dictionary is not an appropriate source of law for this Court to conclude that the Forest Service was arbitrary and capricious in relying on a multi-agency determination that three or four miles is sufficiently near or close to an at-risk community to designate it as wildland urban interface. Because both Plans designated wildland urban interface by looking to the community's specific needs and relying on the "best available science" as permitted under HFRA, the Court will defer to the Forest Service's expertise on this scientific matter. *Klamath-Siskiyou Wildlands Center v. Bureau of Land Mgmt.*, 387 F.3d 989, 993 (9th Cir. 2004) (stating that courts must "be mindful to defer to agency expertise,

-15-

particularly with respect to scientific matters within the purview of the agency").

Council's next concern that the Telegraph Project's designation of wildland urban interface itself exceeds even that of the Community Plans', similarly lacks merit.   Council created its own map to show that the most of the wildland urban interface within the Telegraph Project is not confined to the four one-mile concentric zones around Elliston and Rimini.   (*see* Doc. 12 at 34; AR 88157). Council then argues that the Forest Service arbitrarily designated more wildland urban interface because it wanted to propose more forest fuels reduction treatments in the surrounding area.   (Doc. 12 at 34.)

First, there is no indication that Council's map accurately represents the Powell County Plan's designated wildland urban interface.   Council's map designates only the four mile zone around Elliston.   (*Id.*)   This excludes any of the acreage outside the four-mile zone which is designated by virtue of its importance as an ingress/egress area and surrounding power lines.[3]   For this reason, the Court is not persuaded by Council's attempt to discredit the map provided by the Forest Service in the Telegraph Project EIS.   AR 88156.

_____

[3] Council notes that the Powell County Plan does not contain a map of its wildland urban interface.   The Court agrees a map would be helpful.   However, the Powell County Plan is by no means inadequately detailed.   When it comes to wildland urban interface, the Plan contains clear statements as to what was designated (*see* AR 6993, 7007, 7011–12), why it was designated (*see* AR 7011–14), and how much was designated (AR 7015).   These statistics make clear that far more acreage is designated as wildland urban interface than the four-mile circular zone around Elliston.

Additionally, to the extent that Council argues that the Forest Service is seeking to increase areas designated as wildland urban interface because it observes the need for treatments within the "ridgeline between Minnehaha drainage and the Little Blackfoot drainage," the Court can find no statement that the Project is doing anything other than proposing treatments within areas which are *already* designated as wildland urban interface by the County Plans.    AR 89027, 86713, 7288–90.

Having reviewed this claim de novo, the Court finds that Council's concerns lack merit.    This claim is dismissed.

## II.    Waiver

Judge Lynch determined that Council waived a number of claims by failing to address them in its opening brief, including: (1) the Telegraph Project EIS contained an insufficient discussion of the cumulative impact of the Telegraph and Tenmile Projects combined; (2) the Telegraph Biological Opinion inadequately discusses the effects of open and total linear route density; and (3) that 527 acres of helicopter-ignited burn activity was not discussed with specificity in the Telegraph Biological Opinion.

Council objects to these determinations and argues that Judge Lynch did not address any of the exceptions to the waiver doctrine.    (Doc. 39 at 31–35.)

The Ninth Circuit has stated time and time again, that a litigant waives an

issue by failing to address it in its opening brief. *United States v. Ullah*, 976 F.2d 509, 514 (9th Cir. 1992); *Alaska Ctr. For Env't v. U.S. Forest Serv.*, 189 F.3d 851, 858 (9th Cir. 1999); *Image Tech. Serv., Inc. v. Eastman Kodak Co.*, 136 F.3d 1354, 1356–57 (9th Cir. 1998); *Friends of Yosemite Valley v. Kempthorne*, 520 F.3d 1024, 1033 (9th Cir. 2008). However, as noted by Council, there are certain instances where the Ninth Circuit has found an exception to this general principle. *See United States v. Salmon*, 792 F.3d 1087, 1090 (9th Cir. 2015); *see also United States v. Deyer*, 804 F.3d 1266, 1277–78 (9th Cir. 2015). There are three circumstances when an issue not properly raised may nonetheless be addressed:

> (1) for good cause shown or if a failure to do so would result in manifest unjustice, (2) when the issue is raised in the appellee's brief, or (3) if the failure to raise the issue properly did not prejudice the defense of the opposing party.

*Sharemaster v. SEC*, 847 F.3d 1059, 1070 (9th Cir. 2017) (internal quotation marks, brackets, and citations omitted). Only the third exception applies here.

The Ninth Circuit has held that a party cannot claim prejudice where it had a chance to respond to an issue in briefing and address it at oral argument. *Salmon*, 792 F.3d at 1090. In other instances, the court has indicated that the waiver doctrine is specifically designed to ensure that both parties have an adequate chance to respond to the arguments presented. *Image Tech. Serv.*, 136 F.3d at 1356–57 (quoting "an issue advanced only in reply provides the appellee

no opportunity to meet the contention") (quoting to *Ellingson v. Burlington N., Inc.*, 653 F.2d 1327, 1332 (9th Cir. 1981). However, because a district court has discretion in determining whether an argument is waived, *United States v. Anderson*, 472 F.3d 662, 699 (9th Cir. 2006), *United States v. Doe*, 53 F.3d 1081, 1082 (9th Cir. 1995), the mere opportunity to respond to a claim raised in reply does not ensure the claim's survival, *see Townsent v. Monster Beverage Corp.*, 303 F. Supp. 3d 1010, 1027 (C.D. Cal. 2018) (stating "generally reply briefs are limited in scope to matters either raised by the opposition or unforeseen at the time of the original motion") (internal quotations and citations omitted); *see also Salmon*, 792 F.3d at 1090 (finding the claim not waived where there was an oral argument in addition to an opportunity to respond in a brief). These cases make clear that a court has discretion to determine whether the opposing party had a meaningful opportunity to investigate and respond to the claim before the court.

Council maintains that these circumstances are present here because the staggered briefing schedule in the parties cross motions for summary judgment allowed the Forest Service to get the final word on all claims presented. While that may be the case, the briefing schedule imposed by this Court, including its word count, assumed that both parties would raise their full arguments in their respective opening briefs.

Judge Lynch observed that Council had "presented several new arguments in

their summary judgment reply brief that are either not advanced in their Complaint, or not argued in their opening summary judgment brief" and observed that the reply brief was 14-pages longer than the opening brief.   Judge Lynch found that these circumstances prejudiced the Forest Service.   The Court agrees.

While the Forest Service had approximately a month to respond to Council's opening brief and was allotted 13,000 words to do so, the Forest Service was given half this time to respond to the reply brief and permitted only 3,250 words.   (Doc. 6.)   These constraints are significant in a complex case where the administrative record itself is 92,288 pages long.   For these and the reasons explained by Judge Lynch, the Court adopts the recommendation and will dismiss these claims as waived.

### III.    Adequacy of the Biological Opinion

Judge Lynch found that the Fish and Wildlife Service ("FWS") conducted an adequately "detailed discussion" in its Biological Opinion of the effects of the Telegraph Project on several resources which impact grizzly bears.   Specifically, Judge Lynch determined that the Biological Opinion's treatment of each of the four resources at issue passed muster.   (*See* Doc. 38 at 19–29.)   These resources are: (1) forest cover and forage production; (2) linkage habitat; (3) the use of closed roads in grizzly bear core area equivalents; and (4) helicopter-ignited

prescribed burns.[4]

The ESA requires an agency to consult with the FWS before the agency engages in an "agency action" to "insure that [the action] . . . is not likely to jeopardize the continued existence of any endangered or threatened species[.]" 16 U.S.C. § 1536(a)(2). An agency may engage in informal consultation with the FWS, or it may prepare a biological assessment to determine whether its action will not likely jeopardize a listed species, or whether further review is necessary. 50 C.F.R. §§ 402.12 and 402.12. If, as the result of an informal consultation of a biological assessment, an agency concludes a proposed action may adversely affect a listed species, as occurred here, then the agency must engage in a formal consultation with the FWS and obtain a biological opinion from the FWS as to whether the proposed action is likely to jeopardize a listed species. 16 U.S.C. § 1536(b); 50 C.F.R. § 402.14.

Among other requirements, a biological opinion must contain a summary of the information on which the opinion is based. It must also contain a "detailed discussion" of the effects of the action on a listed species. 50 C.F.R. § 402.14(h). For each of the resources listed above, Council challenges that the discussion

_____

[4] Additionally, Judge Lynch found that Council's reliance of USFS Wildlife Biologist Denise Pengroth's concerns were not well taken, because the administrative record contained a letter from Dr. Pengroth where she expressly withdrew her concerns. AR 529. Because Council does not object to this finding, the Court has reviewed for clear error and found none.

contained within the FWS's Telegraph Biological Opinion is adequately "detailed."

### A. Forest Cover and Forage Production

Council first argues that Judge Lynch erred in determining that the Biological Opinion's two-sentence conclusory treatment of forest cover was adequately detailed.    Council cites to *Native Ecosystems Council v. Krueger*, 63 F. Supp.3d 1246 (D. Mont. 2014), for the proposition that *all* effects on a resource must be discussed, not simply adverse effects.    However, *Krueger* is not entirely on point because, in contrast to the circumstances here, it did not contain a site-specific Biological Opinion and is therefore not a case that provides any context for what constitutes a "detailed discussion."    *Id.* at 1250.    Further, this claim provides no specific factual or legal objection to Judge Lynch's finding on this issue.    As this Court has stated many times, objections that are "argued in an attempt to engage the district court in a rehashing of the same arguments set forth" in the original briefing, "the applicable portions of the findings and recommendations will be reviewed for clear error."    *Rosling v. Kirkegard*, 2014 WL 693315, at *3 (D. Mont. Feb. 21, 2014).    This Court does not find that Judge Lynch clearly erred in determining that a discussion of the specific 4,765 acres of reduction in forest cover was not required where the FWS explained that "the amount of cover in some treatment units may decrease in the short term, opening

of the canopies would also stimulate the understory growth of grasses and forbs, thus enhancing the forage vale. The effects of the proposed action on grizzly bear cover and forage would be insignificant." AR 448.

Council next argues that Judge Lynch erred in looking to the statements contained in the Telegraph Biological Assessment to provide further context to determine whether the Biological Opinion's discussion of forest cover was adequately "detailed." Council argues that this amounts to the Court having "substituted its own analysis for the analysis that FWS was legally required to conduct." (Doc. 39 at 25–26.)

The Court disagrees with this assessment. The section of the Biological Opinion which discusses the "effects of other aspects of the proposed project" summarizes the FWS's conclusion as it pertains to forest cover and concludes by stating that "[a]dditional analysis on the effects of the proposed action can be found in the 2016 biological assessment." AR 448. This statement expressly incorporates by reference those sections in the Biological Assessment which provided the basis for the FWS's conclusion. Therefore, there was nothing improper about Judge Lynch's having looked to the Biological Assessment for "additional analysis" to provide context for Biological Opinion's discussion. Council cites no legal authority to suggest that this practice is impermissible. The cases cited by Council indicate only that courts should refrain from speculating on

the reasons why an agency made a certain decision and should not attempt to "infer an agency's reasoning from silence." *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2127 (2016); *Crickon v. Thomas*, 579 F.3d 978, 982 (9th Cir. 2009). Neither practice occurred here. In the absence of any authority to suggest that this practice amounts to an agency's having shirked its duties as a matter of law, the Court will not find that the agency was arbitrary or capricious where it clearly incorporated by reference the analysis conducted within the Biological Assessment accompanied by a clear statement as to the reasons for its conclusion.

**B. Linkage Habitat**

Council's argument as to linkage habitat mirrors its argument raised above. It first argues that the three "boilerplate sentences" that Judge Lynch determined constituted a "detailed discussion" are so devoid of detail that they could apply to any logging project. It next argues that Judge Lynch erred in looking to the Biological Assessment for further context. For the reasons already explained, the Court determines that the sentences read in context of their fuller discussion contained in the Biological Assessment provide a "detailed discussion" as required by 50 C.F.R. § 402.14(h). The Court does not find this practice to be error. Reviewing Judge Lynch's general finding for clear error, the Court finds none.

**C. Use of Closed Roads in Grizzly Bear Core Area Equivalent**

Council objects to Judge Lynch's finding that the effects of using closed

roads in grizzly bear core area equivalents was adequately addressed insomuch as it was properly tiered to the 2014 and 2016 programmatic Biological Opinions. Again, Council objects that Judge Lynch erred in looking to the Biological Assessment and for the reasons explained above, the Court adopts the recommendation to dismiss this claim.

Additionally, Judge Lynch responded to Council's broader tiering claim by determining that Council had not met its burden to show that the Telegraph Project is insufficiently tiered to the two programmatic Biological Opinions. Council did not specifically object to this finding and therefore the Court reviews for clear error. Having reviewed the record and the Court's holding in *Krueger*, the Court finds no clear error in Judge's Lynch's determination that *Krueger* is inapposite to the case at hand. For this, and the reasons explained by Judge Lynch, the Court will dismiss this claim.

### D. Helicopter-Ignited Prescribed Burn

In addition to the concern that the Telegraph Biological Opinion failed to provide a "detailed discussion" of the disturbance on grizzly bears from helicopter-ignited prescribed burn, Council raised an additional claim concerning the heightened effects of prescribed burning in core area equivalents. This Court has already concluded that this latter issue was waived. Because Council does not object to Judge Lynch's finding that the Biological Opinion contains a "detailed

discussion" of the effects of helicopter-ignited prescribed burn, the Court has reviewed this finding for clear error. Finding none, the Court adopts the recommendation to dismiss this claim. Therefore,

IT IS ORDERED that Judge Lynch's Findings and Recommendation (Doc. 38) are ADOPTED in part and REJECTED in part.

IT IS FURTHER ORDERED that Defendant's Motion (Doc. 18) is GRANTED. Summary Judgment will be entered in favor of the Forest Service.

IT IS FURTHER ORDERED that Plaintiffs Motion (Doc. 10) is DENIED.

DATED this 31st day of July, 2018.

Dana L. Christensen, Chief District Judge
United States District Court